EILEEN M. DECKER
United States Attorney
PATRICK R. FITZGERALD (Cal. Bar No. 135512)
Chief, National Security Division
MELISSA MILLS (Cal. Bar No. 248529)
Assistant United States Attorney
Terrorism and Export Crimes Section
JOANNA M. CURTIS (Cal. Bar No. 203151)
Assistant United States Attorney
Violent and Organized Crime Section
MICHAEL S. WARBEL (Ohio State Bar No. 0074369)
Trial Attorney, U.S. Department of Justice
1200/1300/1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone:    (213) 894-4591/0627/0298
Facsimile:    (213) 894-6436
E-mail:   Patrick.Fitzgerald@usdoj.gov
          Melissa.Mills@usdoj.gov
          Joanna.Curtis@usdoj.gov
          Michael.Warbel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>          v.<br><br>PAUL ANTHONY CIANCIA,<br><br>                  Defendant. | No. CR 13-902-PSG<br><br>GOVERNMENT'S RESPONSE TO PRE-<br>SENTENCE INVESTIGATION REPORT<br>AND POSITION WITH RESPECT TO<br>SENTENCING<br><br>Sentencing:  November 7, 2016,<br>                 1:00 p.m. |

     Plaintiff United States of America, by and through its counsel of record, the Office of the United States Attorney for the Central District of California, hereby files the Government's Response to the Presentence Investigation Report (CR 182) and Position with Respect to Sentencing of defendant Paul Anthony Ciancia ("defendant").

1       The Government's Response to the Presentence Investigation

2  Report and Position with Respect to Sentencing is based on the

3  attached Sentencing Memorandum, the files and records of this case,

4  the Presentence Investigation Report, and any further argument or

5  evidence the Court may allow.

6  Dated:  October 24, 2016        Respectfully submitted,

7                                  EILEEN M. DECKER
                                   United States Attorney
8

9                                  /s/ Patrick R. Fitzgerald
10                                 PATRICK R. FITZGERALD
                                   MELISSA MILLS
                                   JOANNA M. CURTIS
11                                 Assistant United States Attorneys
                                   MICHAEL S. WARBEL
12                                 Trial Attorney, U.S. Dept. of
                                   Justice
13
                                   Attorneys for Plaintiff
14                                 UNITED STATES OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                              PAGE

TABLE OF AUTHORITIES.................................................................. ii

I. SUMMARY OF GOVERNMENT'S POSITION.................................... 1

II. OBJECTIONS TO THE PRESENTENCE REPORT............................. 3

III. GOVERNMENT'S SENTENCING POSITION AND RECOMMENDATION........... 8

A.    THE COURT SHOULD FIND A GUIDELINES SENTENCE OF LIFE FOR
      COUNTS FOUR AND EIGHT........................................... 8

B.    THE COURT SHOULD IMPOSE A LIFE SENTENCE BASED ON THE FACTORS
      IN SECTION 3553(a)............................................. 9

IV. CONCLUSION...................................................... 13

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**Cases**

Molina v. Martinez,
    136 S.Ct. 1338 (2016)............................................... 4

United States v. Cervantes-Valenzuela,
    931 F.2d 27 (9th Cir. 1991)........................................ 8

United States v. Mathews,
    120 F.3d 185 (9th Cir. 1997)....................................... 9

**Statutes**

18 U.S.C. § 3553.......................................................... passim

18 U.S.C. § 3661.......................................................... 8

18 U.S.C. § 37............................................................ 10

18 U.S.C. § 924........................................................... 10

**Other Authorities**

U.S.S.G. § 1B1.4.......................................................... 8

U.S.S.G. § 2A2.1.......................................................... 3, 9

U.S.S.G. § 3A1.2.......................................................... 3

U.S.S.G. § 3D1.4.......................................................... 9

U.S.S.G. § 5E1.2.......................................................... 2

### GOVERNMENT'S SENTENCING MEMORANDUM

### I.

### SUMMARY OF GOVERNMENT'S POSITION

Defendant's crimes are among the most vicious, horrific, and senseless ever charged in the history of the District Court for the Central District of California.  Defendant plotted to commit mass murder at one of the nation's foremost transportation hubs, murdered a beloved public servant in cold blood, seriously injured two other federal officers whom he shot and was attempting to kill, shot and injured a passenger who was traveling to attend a wedding, and terrified hundreds of other passengers and employees at Los Angeles International Airport who feared for their lives and the safety of their families.  In recognition of the egregious nature and consequences of defendant's crimes, the government believes that the Court should impose a life sentence on Counts Four and Eight even though that is not the statutory minimum sentence.

The United States Probation Office in its Presentence Investigation Report ("PSR") agrees with both the government and defendant that the mandatory minimum sentence in this case on Count One is imprisonment for life, plus sixty additional years on Counts Nine, Ten and Eleven.  (PSR ¶ 16; Plea Agreement ¶ 22).  The government also agrees with the Probation Office that defendant should receive a life sentence for Counts Four and Eight (which also are based on the murder of Transportation Security Administration Officer Gerardo Hernandez), although the government's position as to how the Court should conduct the sentencing calculation under the Sentencing Guidelines differs slightly from the way that the

Probation Office's calculated a life sentence.  The government also agrees that defendant should receive a sentence of 20 years each for Counts Two, Three, Five, Six and Seven (which are based on defendant shooting Tony Grigsby, James Speer and Brian Ludmer).

The government agrees with the Probation Office that all fines should be waived under U.S.S.G. § 5E1.2(a) because defendant lacks an ability to pay a fine, but he must pay the $1,100 mandatory special assessment.  Although defendant will never be released from prison given his life sentence, the government agrees that for legal purposes the Probation Office's calculation of the term of supervised release is correct.

The government disagrees with the Probation Office and requests the Court not make a recommendation to the Bureau of Prisons as to which facility it will designate defendant.  This decision will require the Bureau of Prisons to balance several important factors, including considerations of facility security and the safety of federal prison workers in light of defendant's mental condition and the fact that he continues to subscribe to the belief structure that contributed to the commission of his crimes.  The Bureau of Prisons will be in the best position to make the facility determination.

In regard to other sentencing issues, the government will submit briefing regarding restitution at a later date and probably will request a deferred restitution hearing.  The Court has issued an order of forfeiture for firearms and ammunition purchased by defendant, as stipulated in the plea agreement.  The government will coordinate with the victims and assist them in filing any written statements they wish to provide to the Court and will provide notice

1  to the Court as to which victims will wish to address it at the

2  sentencing hearing.

3                                    **II.**

4                    **OBJECTIONS TO THE PRESENTENCE REPORT**

5        While the government agrees with most of the proposed findings

6  and recommendations contained in the PSR and the Probation Office's

7  Recommendation Letter, its specific objections are noted as follows.

8        **Victim Impact Section, pp. 16-17.**  The current section of the

9  PSR for Victim Impact does not summarize the injuries suffered by

10 TSA Officer James Speer, whose injuries are documented in other

11 portions of the PSR.  (See PSR ¶¶ 37-38).  Similar to what the

12 Probation Office has done for other victims, the government requests

13 that a summary of Officer Speer's victim impact be added to this

14 section of the PSR.

15       **Paragraphs 66, 72, 78, 101.**  For those charges other than Count

16 One for which this Court has discretion to determine the sentence,

17 the parties provided a Guideline calculation in the plea agreement.

18 (Plea Agreement ¶ 29).  The total offense level under this

19 calculation is Level 42, which has a range of 30 years to life.  The

20 parties have agreed not to seek, argue, or suggest that any other

21 specific offense characteristics, adjustments or departures be

22 imposed, except for a request for an upward departure by the

23 government under U.S.S.G. § 2A2.1.

24       The Probation Office's calculation is very similar to the one

25 proposed by the parties, but adds an additional six-level adjustment

26 under U.S.S.G. § 3A1.2(b).  (PSR ¶ 66).  The total offense level

27 according to the Probation Office therefore is level 48, which

28

carries a sentencing range of life.  (PSR ¶ 101).  As the Probation Office recognizes, in practical effect there is no plea-agreement impact on defendant's ultimate sentence because defendant will receive a sentence of life on Count One no matter the calculation under the Guidelines.  (PSR ¶ 201).

Nonetheless, the Supreme Court requires the Court to determine a guideline range for Counts Two through Eleven as part of its sentencing determination under 18 U.S.C. § 3553(a). Molina v. Martinez, 136 S.Ct. 1338, 1342 (2016).  In accordance with the plea agreement, the government requests the Court to use the analysis contained in the plea agreement.  Under this calculation, the Court can and should sentence defendant to life imprisonment (the same Guidelines sentence recommended by the Probation Office), which is within the offense range stipulated to by the parties.

The reasons why the Court should sentence defendant to the high end of the applicable offense range largely duplicate the analysis of the other statutory sentencing factors under 18 U.S.C. § 3553(a). These reasons are discussed in more detail in Section III.

**Paragraph 110**.  As a basis for determining defendant's personal characteristics, the Probation Office relies on certain preliminary reports written by a neuropsychologist and psychiatrist.  (PSR ¶ 110).  While the government does not object to having information from the preliminary reports contained in the PSR, the circumstances under which these reports were prepared should be clarified to make explicit that the authors of the reports were experts retained by defense counsel as part of the criminal litigation and their interviews with defendant were conducted pursuant to that role.

Accordingly, the government requests that paragraph 110 be amended by adding the following underlined material:  (1) "… Preliminary Report/Neuropsychological and Anthropometric Evaluation (hereinafter NAE) prepared in August 2015 by a person retained by the defense in the criminal litigation named …"; and (2) "… Preliminary Report Psychiatric Evaluation (hereinafter PE) prepared by a person retained by the defense in the criminal litigation named …."

**Paragraph 174**.  The first sentence of this paragraph could reasonably, but erroneously, be read to conclude that Dr. Kohler diagnosed defendant with delusional disorder, persecutory type.  Dr. Kohler did not make such a diagnosis; thus, the government objects to the portion of this sentence after the words, "chronic psychotic disorder."  Additionally, the quotation comprising the last sentence of this paragraph appears to erroneously attribute to Dr. Kohler a diagnosis of paranoid schizophrenia.  The actual quotation from Dr. Kohler's report states as follows:  "As for Paul Ciancia's behavior since arriving at MDC, which has been noted as unremarkable it is my clinical experience that persons with *chronic psychosis* can appear reasonably stable despite ongoing clinical symptoms and without specific treatment when given a highly predictable and structured setting, such as the prison system."  (Kohler Report at p. 36, emphasis added).  These misleading suggestions that Dr. Kohler diagnosed defendant with either paranoid-type delusional disorder or paranoid schizophrenia should be stricken from the PSR.

**Paragraph 175**.  This paragraph might be read to convey the misleading impression that Dr. Hope assessed that defendant does not pose a risk of future danger.  To place Dr. Hope's findings in

context, this paragraph should be amended to include the following
quotation, which opens the assessment portion of Dr. Hope's March
31, 2016 letter to the defense:

> "The ubiquitous conclusion derived from experience
> and the research literature on violence is that the
> best predictor of the probability of future violence
> is past violent behavior.  Mr. Ciancia has a
> documented history of violence toward both animals
> and people while in the community.  Furthermore,
> based on the available documents, it appears that he
> purchased firearms and developed his marksmanship.
> The records also indicate a likely preoccupation with
> violent content."

(Dr. Hope letter dated March 31, 2016, at p. 2).  Paragraph 175
should also include Dr. Hope's caveat that her assessment and
overall opinion was "limited" because it was based only on records
and personal interactions, and did not have the benefit of any
evaluation of defendant.  (Id. at p. 1).

**Paragraph 178**.  This paragraph should be stricken from the PSR.
First, it does not explain the circumstances under which Mr. Phillip
Wise was consulted or whether his views on Bureau of Prisons
facilities are still current.  It does not explain the materials he
was provided to serve as the basis for his opinion.  It states with
no condition or explanation that defendant has been "diagnos[ed] as
having a psychotic disorder which falls somewhere on the
schizophrenia spectrum" -- an assertion that the government believes
is in dispute.  More importantly, there is no explanation why the
opinion of a former BOP official, even if based on full knowledge of
all relevant facts, should trump the determinations by current and
future BOP officials who have the actual responsibility for

1  determining what is the best placement for defendant.  (See

2  designation discussion, below.)

3      **Probation Office Recommendation Letter p. 2 (Designation)**.  In

4  its Sentencing Recommendation Letter, the Probation Office

5  recommends that the Court recommend that the Bureau of Prisons

6  designate defendant to a specific Federal Medical Center.  While

7  such a designation may or may not be appropriate, the government

8  does not believe that the Court should make such a specific

9  recommendation given the need for the Bureau of Prisons to balance

10 numerous factors in determining the conditions of defendant's

11 imprisonment.  Not least among these is the need to protect Bureau

12 of Prisons personnel from a prisoner who killed a federal official,

13 attempted to kill many more, has shown no remorse over his conduct,

14 and continues to harbor the same beliefs that led him to commit his

15 crimes.  Given the defendant's age, the Bureau of Prisons probably

16 will have the responsibility for determining the appropriate

17 conditions of defendant's imprisonment for decades to come and

18 should not be limited by recommendations – however well-intended –

19 from outside entities.  Moreover, a recommendation by the Court for

20 a specific facility is particularly inappropriate because all BOP

21 facilities are staffed by psychologists who can treat defendant.

22 (PSR § 175).

23

24

25

26

27

28

**III.**

**GOVERNMENT'S SENTENCING POSITION AND RECOMMENDATION**

A.    THE COURT SHOULD FIND A GUIDELINES SENTENCE OF LIFE FOR COUNTS
      FOUR AND EIGHT.

Under the parties' stipulation, the Guideline range for Level
42 and Criminal History Category I is 30 years to life.  In choosing
a sentence within the Guideline range, the Court must consider the
sentencing factors contained in 18 U.S.C. § 3553(a), but otherwise
has very broad discretion to consider all relevant information in
determining a defendant's sentence.  18 U.S.C. § 3661; U.S.S.G.
§ 1B1.4; <u>United States v. Cervantes-Valenzuela</u>, 931 F.2d 27 (9th
Cir. 1991) (district court appropriately sentenced defendant at top
of applicable Guideline range because of defendant's lengthy
criminal history).

For the reasons stated in the following section, the factors
under Section 3553(a) compel a finding that defendant should receive
a life sentence even if that was not the mandatory minimum sentence
for Count One.

Although the government does not believe on the facts of this
case that there is any reason why the Court would impose a different
sentence if the applicable offense level under the Guidelines was
Level 48 (range of life) as calculated by the Probation Office
rather than Level 42 (range of 30 years to life), there is an
alternative Guidelines calculation the Court could adopt if this
difference in the offense range would be material to the Court.
This alternative calculation results in an offense range of "life
only" that does not violate the parties' stipulation in the plea

8

agreement.  The Court could depart two levels upward pursuant to U.S.S.G. § 2A2.1, comment 2, on Counts Two and Three; this comment authorizes an upward departure when a defendant creates a substantial risk of death to more than one person.  A two-level departure therefore is more than justified given the facts of this case.  See, United States v. Mathews, 120 F.3d 185 (9th Cir. 1997) (departure under § 2A2.1 was justified when defendant wanted to bomb house with two people, although a four-level upward departure on those facts was too high).

This two-level departure would result in Counts Two and Three having an adjusted offense level of Level 39 rather than Level 37. (PSR ¶¶ 70-71, 76-77).  This new offense level would change the grouping calculation under U.S.S.G. § 3D1.4 because now the adjusted offense level for Counts Two and Three would be within four levels of the offense level (Level 43) for the highest count – Count One. U.S.S.G. § 3D1.4(a).  Counts Two and Three then would each add one "unit" to the grouping adjustment rather than ½ unit, for a total of three units.  The total adjustment for grouping therefore would be three levels and the total offense level would be Level 43.  Level 43 is the highest level under the Guidelines so there is no difference between the offense range for Level 43 (life) and the offense range for the Probation Office's Level 48 (life).

B.   THE COURT SHOULD IMPOSE A LIFE SENTENCE BASED ON THE FACTORS IN SECTION 3553(a)

In determining the appropriate sentence for Counts Four and Eight under Section 3553(a), the Court must consider the "nature and circumstances of the offense and the history and characteristics of

the defendant." 18 U.S.C. § 3553(a)(1). The nature and circumstances of the offenses in this case could scarcely be more serious. Both 18 U.S.C. § 37(a)(1) (Count Four) and 18 U.S.C. § 924(j)(1) (Count Eight) on the facts of this case are capital crimes that essentially charge first-degree murder. (Plea Agreement ¶¶ 8(d), 10). Defendant's actions were premeditated and done with malice aforethought. (PSR ¶¶ 20-27, 158). The murder of Officer Hernandez has caused incalculable loss to his family (PSR ¶¶ 52-54), and also to his friends and coworkers (PSR ¶¶ 44-45).

While the murder of Office Hernandez standing alone warrants a life sentence, further characteristics of defendant's offenses make them particularly vicious, horrific, and senseless even compared to many other first-degree murders. These include: (1) defendant's intent to kill more than one person; (2) defendant's purpose in killing Officer Hernandez was to dissuade federal officers from the performance of their duties and disrupt the functioning of the United States government (PSR ¶¶ 21, 24, 25); (3) the attempted murder of Officers Grigsby and Speer; (4) the actual shootings of Officer Grigsby, Officer Speer, and Mr. Ludmer and the serious injuries resulting from the shootings; (4) the distress and concern suffered by their families, friends, and co-workers; and (5) the fear and distress suffered by hundreds of persons at LAX who were exposed to defendant's rampage (PSR ¶¶ 33, 40-41, 44-50).

Only a life sentence therefore is sufficient under Section 3553(a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Adequate deterrence to other

criminal conduct also requires a life sentence because defendant's ideological justification for his crimes essentially render them an act of terrorism.  18 U.S.C. § 3553(a)(2)(B).  As discussed above, a life sentence is within the relevant Guideline range and is the presumed sentence for first-degree murder.  18 U.S.C. § 3553(a)(3), (4)(A).  Imposition of a life sentence therefore will not create any unwarranted sentencing disparities.  18 U.S.C. § 3553(a)(6).

The PSR contains a lengthy discussion of defendant's childhood and mental health status.  This portion of the PSR is based to a considerable degree on defendant's statements to experts retained by the defense for purposes of the death-penalty litigation.  Defendant declined to be interviewed by the Probation Office (PSR ¶ 110), and not all of his statements about his childhood or mental state are necessarily accurate or have been confirmed by more reliable sources.  The government does not agree with all of the specific diagnoses and some of the methodology adopted by the defense experts (PSR ¶¶ 169-70, 174).

Nonetheless, the government does not dispute that defendant has some combination of disorders recognized under the DSM-5 and concurs that he has had suicidal ideation in the past.  The government appropriately considered these facts in determining whether it would continue to seek the death penalty for defendant.  Even as described by the defense experts, however, none of these characteristics are so mitigating as to justify a sentence of less than life imprisonment given the overwhelming weight of the factors that compel a sentence of life.  Moreover, there is information in the PSR (PSR ¶¶ 158, 175) concerning defendant's lack of remorse for his

murder of Officer Hernandez or his attacks on his other victims. This lack of remorse, the fact that defendant remains "resolute" regarding his continuing "hatred" of at least certain federal employees (PSR ¶ 175), and the risk of future dangerousness also support imposition of a life sentence because it is necessary to protect the public from further crimes of the defendant.[1] 18 U.S.C. § 3553(a)(2)(C).

Because the Court should impose a life sentence under the Guidelines and Section 3553(a) even if there was no mandatory minimum on Count One, it also should sentence defendant to the statutory maximum sentences (twenty years) for Counts Two, Three, Five, Six, and Seven.

//

//

//

---

[1] As noted elsewhere, this lack of remorse and the risk of future danger to federal prison employees are compelling additional reasons why the determination of defendant's placement should be left to the Bureau of Prisons.

**IV.**

**CONCLUSION**

The Court cannot issue an order that will fully heal a shattered limb, erase the memory of painful injuries and resulting surgeries, provide a deceased husband's caress to his widow, or restore the dead to life.  It can impose a just sentence in this case under Title 18 of the United States Code and the Sentencing Guidelines.  The government therefore respectfully requests the Court to sentence defendant to the custody of the Bureau of Prisons for a term of life imprisonment, plus 60 years.

Dated:  October 24, 2016          Respectfully submitted,

                                  EILEEN M. DECKER
                                  United States Attorney


                                  /s/ Patrick R. Fitzgerald
                                  PATRICK R. FITZGERALD
                                  MELISSA MILLS
                                  JOANNA M. CURTIS
                                  Assistant United States
                                  Attorneys
                                  MICHAEL S. WARBEL
                                  Trial Attorney, U.S. Dept.
                                  of Justice

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA